## 39689. ROPER v. THE STATE.

WELTNER, Justice.

Stanley Lee Roper was convicted of two murders, aggravated assault, and armed robbery committed with a handgun. The state did not seek the death penalty.

The state presented evidence from which the jury could have found the following facts beyond a reasonable doubt: Michael Wilson, Gordon Roper and Stanley Lee Roper met a few days before Christmas Eve of 1981 to plan an armed robbery. Each brandished his handgun during the meeting. During the afternoon of Christmas Eve, the three men rode in Gordon Roper's white Trans Am to the County Line Liquor Store in Luthersville, Georgia, where they and the automobile were observed by the store's clerk, Ms. Lula Mae Almond. They purchased beer and peanuts, and the man later identified as Stanley Lee Roper was observed by Ms. Almond leaning over the counter looking into the opened cash register drawer. Ms. Almond testified that the group returned to the store twice more that afternoon while she was working, and that the Trans Am was in the store's parking lot when she left work.

The same group, sometimes accompanied by a woman, were observed at various times during the afternoon riding in a white

---

Trans Am being driven into the parking and service areas of a grocery store and two service stations located within a few miles of the liquor store. The grocery clerk testified that the man later identified as Gordon Roper purchased a three-cent box of matches with a twenty dollar bill while the man later identified as Stanley Lee Roper walked around in the store observing items on the shelves. One of the gasoline station clerks and his customer testified that the group purchased gasoline, and that the woman with them purchased a soft-drink, which she dropped on the floor of the station. The station attendant at the second station watched the group pump one dollar and sixty-five cents in gasoline into a white Trans Am after paying him only one dollar. Fearful for his safety he did not insist upon full payment. When the group drove off, then turned around and drove back by the station slowly, the attendant became apprehensive of impending trouble, closed the station, and left the area. Before dark, Wilson and the two Ropers drove to Pat Patterson's Club in Luthersville in a white Trans Am. They had visited the club previously on trips to Luthersville, and their identities were known to one of the club's customers and an employee.

Mr. Charles Edward Fowler, Sr., and his wife, Loretta Fowler, the owners of the County Line Liquor Store, assisted by their son, Charles Edward Fowler, Jr., were operating the store after dark that Christmas Eve. About eight to ten customers were present when Michael Wilson and the two Ropers entered the store firing pistols. The younger Fowler was shot, although he immediately raised his hands. When he was hit, he pushed his mother to the floor and shielded her with his body. The elder Fowler, wounded at least once, crawled behind the counter, got his pistol, and returned the intruders' fire, wounding two of them before he was shot fatally. Wounded four times, and lying on the floor under her wounded son, Mrs. Fowler observed the shoes of the assailants. One intruder shot her son once more as he lay on top of her, and kicked her to see if she was alive. He wore dirty white tennis shoes. The third man took approximately $19,000 in cash and checks from the register.

When the investigating officers arrived at the scene, Mrs. Fowler was found alive but seriously wounded, and her son and her husband were dead. Medical testimony confirmed that the Fowlers' wounds were caused by pistol bullets which caused the deaths of the elder and younger Fowlers. Police investigators found blood splatterings indicating that one or more of the perpetrators had been wounded by the elder Fowler, and discovered a piece of a plastic wind spoiler from the lower front end of the Trans Am lying in a ditch which the automobile crossed from the store's parking lot onto the highway.

Later that evening, a medical trauma technician at the Clayton

General Hospital observed a white Trans Am parking at the hospital's emergency ramp. Two bleeding males emerged from the Trans Am. Both had sustained bullet wounds. In the opinion of the medical technician, neither was in a condition to have been able to operate the automobile in order to have arrived at the hospital within the elapsed time after commission of the crimes. Bloodstained and glass-covered tan leather shoes were removed from the man later identified as Gordon Roper, and blue tennis shoes were removed from Michael Wilson. Neither man had money nor a firearm on his person. Investigating officers interviewed Gordon Roper at the hospital and placed him under arrest. Michael Wilson died.

Stanley Lee Roper drove the Trans Am away from the hospital to his sister's home. He also carried to his sister's home Michael Wilson's bloodstained jacket that smelled of beer. The jacket had several bullets in a pocket. The Trans Am later was located by the investigating officers stripped of its engine and interior components and awaiting destruction by the automobile body crushing machine at a salvage establishment near Atlanta. Stanley Lee Roper boarded a commercial aircraft on Christmas Day, and flew to Florida. He was arrested and extradited. He commented to a cellmate that if Mrs. Fowler could not identify him and Mr. Fowler's gun was not found that he "would not be in much trouble." He also told the cellmate that the Trans Am had been disposed of so it could not be found.

Gordon Roper pled guilty during separate proceedings. Stanley Lee Roper's first trial resulted in a mistrial.

1. Roper contends that the evidence was legally insufficient to convict. We disagree. "While the evidence offered by the state to prove . . . guilt was largely circumstantial, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the appellant guilty beyond a reasonable doubt." *Jackson v. State,* 249 Ga. 751, 754 (295 SE2d 53) (1982).

2. Roper contends that the trial court should have granted his motion for new trial because the transcript of proceedings does not reflect that he renewed all motions made at previous hearings. The burden was upon Roper to bring this omission to the attention of the trial court so the transcript could be completed in accordance with the provisions of OCGA § 5-6-41 (f) (Code Ann. § 6-805). *Zachary v. State,* 245 Ga. 2 (262 SE2d 779) (1980).

3. In support of his contention that the trial court erred by denying his motion for change of venue, Roper draws our attention to several local newspaper and radio reports containing details of the events of the shootings and robbery at the County Line Liquor Store and of his trial on the charges for which he later was convicted. He raises also the "small town syndrome" — that is, that everyone in

town knew everything about the events and the criminal charges. *Cunningham v. State,* 248 Ga. 558, 562 (8) (284 SE2d 390) (1981). However, the transcript shows that no venire person was challenged by Roper for prejudice resulting from pre-trial publicity, and none was excused because of a fixed opinion of guilt as a result of pre-trial publicity. Roper simply has failed to demonstrate that the jurors summoned to try the case had formed fixed opinions as to guilt from unfavorable pre-trial publicity. Accordingly, we find no abuse of the trial court's discretion in denying the motion for change of venue. *Cunningham v. State,* supra; *Waters v. State,* 248 Ga. 355, 360 (1) (283 SE2d 238) (1981).

4. Roper contends that the trial court committed reversible error by selecting and then dispersing the jury four days before the trial date. After the traverse jurors had arrived at the courthouse, the court was informed that one of the state's important witnesses would not be available until the next Monday. Rather than dismissing the panel, the court selected and then dispersed the jury. Trial commenced as scheduled on Monday. Roper concedes that the trial court had discretion to disperse the jury, OCGA § 15-12-142 (Code Ann. §§ 59-718.1, 59-719), and did not object at the time of jury selection. He has not suggested how he might have been harmed. We find no abuse of discretion. *Whitaker v. State,* 246 Ga. 163, 168 (14) (269 SE2d 436) (1980).

5. As the state did not seek the death penalty, the trial court did not abuse its discretion in denying Roper's motion for complete recordation of the voir dire. Compare *State v. Graham,* 246 Ga. 341, 342 (271 SE2d 627) (1980), in which the death penalty was not involved with *Owens v. State,* 233 Ga. 869 (214 SE2d 173) (1975), holding that the Witherspoon voir dire must be completely recorded in death penalty cases. Nonetheless, we observe that by far the better practice is to order complete recordation.

6. Roper contends that the trial court should not have granted the state's motion *in limine* prohibiting him from commenting on the fact that the state subpoenaed only twenty-one of the sixty persons whose names appeared on the state's list of witnesses. He asserts that he had a right to comment to the jury that the others were not called because their testimony would have exonerated him. Roper has failed to demonstrate why the general rule of *Wilson v. Zant,* 249 Ga. 373, 384 (4) (290 SE2d 442) (1977), which precludes such comments, should not be applied. We find no error.

7. Roper contends the trial court erred by denying his motion as an indigent for a free copy of the transcript of his first trial. He did not request the transcript of the first trial until twenty-eight days after the completion of the second trial, at which time it was too late for the

transcript to be of any use. We find no error. Britt v. North Carolina, 404 U. S. 226 (92 SC 431, 30 LE2d 400) (1971).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 1983.

*Robert L. Richards,* for appellant.

*Arthur E. Mallory III, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.