## 65205. CLEVELAND v. THE STATE.

DEEN, Presiding Judge.

Appellant was charged with the offenses of burglary and motor vehicle theft, and the jury returned a verdict of guilty on both counts. Appellant subsequently was sentenced to serve six years on each count.

At the trial, Thelma Morrow and her son, Ricky, testified that on June 1, 1981, they had left their house around 4:00 p.m., leaving on only the front porch light. They returned at approximately 10:25 p.m. to find a blue, 1967 Camaro in their driveway and several of the lights on inside the house. Ricky Morrow noted the tag number on the Camaro, and had been able to give the entire number to investigators although at trial he could remember only the initial letters of "TCH."

Moments after the Morrows' arrival, all of the lights went out except for the porch light, and Thelma Morrow approached the front door. A man exited, and for three to five minutes, Thelma Morrow confronted him as to why he had been in her house; he explained that he had thought it was the residence of a David West. Eventually he scurried off the porch, got into the Camaro and drove off in a hurried

fashion. Thelma Morrow stated that she had been about three feet from the man, while her son had been about eight feet away. Both explained that they were able to see the man's face clearly because he had been directly under the porch light, and because the Morrows' car headlights illuminated the area. Both definitely identified appellant during the trial as the man, although they noted that his hair was now shorter and he no longer sported a mustache and beard.

The Morrows then inspected the inside of their house, and found that some jewelry and money had been collected in a glass, and that their television had been unplugged and its antenna wire disconnected. Also, the screen on one front window had been moved, and the window opened.

Constance Detweiler testified that she was the owner of the 1967 Camaro, having purchased it in May 1981 for $2,000. She explained that appellant in the past had worked on her car, and had done so on the afternoon of June 1, 1981; when she had seen appellant at that time, he had a mustache and goatee beard. She had driven the car to work and had parked it in the company lot, but the car was missing when she got off work at 11:00 p.m. She reported the car as stolen to the police department, which ultimately found the car abandoned. Ms. Detweiler admitted that on previous occasions she had loaned the car to appellant, but appellant had not asked to borrow it on June 1, 1981, and she had not given him permission to take the car. Photographs of the car included in the record reveal the tag number to be "TCH 775."

Appellant, through his own testimony and that of two witnesses, attempted to establish an alibi. Appellant maintained that on the night in question he had been at an automobile body shop with the two other witnesses, working on a racing car, except for a brief interval during which he had fetched some food. The two witnesses corroborated appellant's testimony, but neither was sure as to whether one or two days had passed after the night at the body shop before appellant's arrest.

The record of the hearing on the motion to suppress the in-court identification reveals that the Morrows described the man to the investigators as being a white male, about six feet tall, bushy headed, mustache, and approximately one hundred sixty or sixty-five pounds. The morning after the incident, investigators showed the Morrows separately a photographic display of eight men who generally fit the description. Each immediately and unhesitatingly selected appellant's photograph; in the photo, appellant had a mustache and his hair appeared to have been shaped by a removed cap. That afternoon the Morrows separately viewed six men in a physical line-up, and again each immediately identified appellant as

the man, although he was clean-shaven. Four other men in the line-up were also clean-shaven. Appellant was the only one in both the photographic display and the physical line-up.

During the hearing on the motion to suppress, one of the empaneled jurors inadvertently strolled into the courtroom looking for the other jurors. Upon questioning, the juror stated that he had been in the courtroom for less than a minute before his presence had been detected. He had not realized what the proceeding was, and had not heard any of the testimony.

Appellant here enumerates as error the following: 1. The in-court identification of appellant should have been excluded because it derived from impermissibly suggestive out-of-court line-up and photo display identifications; 2. the trial court erred in not granting mistrial because of a juror's inadvertent presence in the courtroom during the hearing on the motion to suppress the identification evidence; and 3. there was insufficient evidence to support a verdict of guilty. *Held:*

1. In deciding whether a pre-trial indentification procedure was so suggestive as to require exclusion of an in-court identification, it must be determined whether the procedure resulted in a very substantial likelihood of irreparable misidentification, and whether under all the circumstances the identification was reliable notwithstanding any suggestive procedure. Simmons v. United States, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968); Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972); *Thornton v. State,* 238 Ga. 160 (231 SE2d 729) (1977). The factors considered in determining the extent of any likelihood of misidentification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation . . ." Neil v. Biggers, supra at 199; *Barner v. State,* 139 Ga. App. 50 (227 SE2d 874) (1976).

Applying the above analysis here, this court concludes that the pre-trial identification procedure below was not impermissibily suggestive and that, in any event, under the totality of the circumstances the identification evidence was reliable. The fact that appellant was the only person to be included in both the photographic display and the physical line-up does not in itself make the procedure impermissibly suggestive. See *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979). In this case, where appellant's appearance at the line-up differed considerably from that in the photo, the arrangement was not suggestive. Appellant also contends that his photo, which indicated that he had recently worn a cap, was overly suggestive since the burglar had worn a baseball-type cap. We cannot

agree, considering the testimony of one of the identifying witnesses that two other photos appeared to him to indicate the same, and the fact that the record is unclear as to whether the investigators, in arranging the photo display, had actually been informed that the burglar had worn a cap. Lastly, the appearances of all the men in the photo display and the physical line-up approximate the description given by the victims.

As noted above, even if the pre-trial identification procedure was too suggestive, under all the circumstances we are compelled to find the identification reliable. Both of the identifying witnesses confronted the burglar practically face-to-face for three to five minutes under good lighting, and the attention of both was concentrated on the burglar. Appellant's features matched the description given by the Morrows, and both unhesitatingly identified appellant at the photo display, the physical line-up and the trial. The photo display and physical line-up both occurred within 24 hours of the incident. In short, the identifications here clearly pass the reliability test, and the trial court properly overruled appellant's objection.

2. In asserting that the trial court should have declared a mistrial because of the inadvertent and brief presence of a juror in the courtroom during the hearing on the motion to suppress the identification evidence, appellant cites no authority and scarcely argues the point. He comes perilously close to having abandoned the enumeration of error. Court of Appeals Rule 15 (c) (2); *Fowler v. Ford Motor Credit Co.,* 143 Ga. App. 680 (240 SE2d 608) (1977). The paucity of argument is understandable since the enumeration of error is without merit.

"When the admissibility of evidence is challenged, a hearing out of the presence of the jury on the question of admissibility is often appropriate and sometimes required." *Coats v. State,* 234 Ga. 659, 661 (217 SE2d 260) (1975). The trial court evidently felt it appropriate to hold the hearing on the motion outside the presence of the jury, but there is no indication of harmful error resulting from the brief exposure of one juror to the hearing. The juror testified that he had been in the courtroom for less than one minute, that he had heard none of the testimony, and that the brief presence had had no bearing on his judgment in the case. Those circumstances certainly did not warrant a mistrial below or reversal here; harm, as well as error, must be shown to authorize reversal. *Ballenger Corp. v. Dresco Mechanical Contractors,* 156 Ga. App. 425 (274 SE2d 786) (1980).

3. Appellant's assertion that the evidence was insufficient to support the verdict of guilty is utterly devoid of merit. Clearly, there was sufficient evidence for the jury, as rational finders of fact, to

conclude beyond a reasonable doubt that appellant was guilty of burglary and motor vehicle theft. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Driggers v. State,* 244 Ga. 160 (259 SE2d 133) (1979).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

Decided November 22, 1983.

*Gordon Staples,* for appellant.

*Arthur E. Mallory III, District Attorney, Robert H. Sullivan, Assistant District Attorney,* for appellee.