## 70805. GOSDIN v. THE STATE.
(336 SE2d 261)

BIRDSONG, Presiding Judge.

Gwindle G. Gosdin was tried, with a co-defendant, of four counts of burglary. The co-defendant, Adams, was acquitted. The evidence shows the four burglaries occurred in April 1984. In each instance, the victims were in the process of selling their homes through a multiple listing service, which published descriptions and pictures of the homes in a booklet. It was determined that the burglars gained entrance to the house by use of a master key to a lockbox which was installed on each house and contained the house key. Only real estate agents possessed these master keys to lockboxes.

In three of the burglaries, witnesses had seen a beige and brown van at the house. In one burglary, the victims' young son was riding his bicycle nearby when he saw the van pull into his driveway; when he approached the two men who went to his front door and asked them their business, the man unlocking the front door replied that he was showing the house. After the appellant and Adams were arrested, the boy later identified their van as the one he had seen. He particularly noticed an unusual compass on the dashboard similar to the compass he had seen in the van at his house. He also picked their photographs from a picture lineup and identified them as the two men he had seen enter his house.

In another burglary, neighbors identified the van as the one seen at the victim's house; in a third burglary a witness described the van she had seen as beige and dark brown, with dark windows. The van appellant was riding in when arrested had dark or tinted windows. A few days after the burglaries, a police officer passed a van matching the description he had been given: it was a customized van, cream and brown, with shiny wheels, a luggage rack, and a Clayton County sticker. He stopped the van. It contained two men matching the description the boy had given: a man age 20-25 years and a man age 40-45, both with brown hair and the older man wearing a vest-type jacket and a salt and pepper beard. Adams got out of the driver's side while appellant was in the passenger's seat. The van appeared to be

Adams'; Adams gave consent to search "his" vehicle. While looking in the van to retrieve a gun Adams had confessed to having, the officer saw a pile of gold jewelry on the dash and a pile of multiple listings real estate books. He asked appellant to leave the van, read him his rights to counsel and asked appellant if he had a real estate lockbox key. Appellant, who was a part-time real estate agent, said he did. *Held*:

1. In the fourth burglary, a Nikon camera was stolen. The victim testified he had received the camera at Christmas, that he had taken several family photos with it and six or eight unused "shots" had remained on the film inside the camera when it was stolen. At trial, the victim identified some photographs as those of his family, but he could not identify another picture that was introduced. The victim was shown a continuous strip of four negatives; he held these to the light and identified three of the negatives as being accurate depictions of his family, but could not identify the fourth negative on the strip. The trial court refused to admit the unidentified photo and the fourth negative on the basis of the victim's testimony; but the arresting officer did identify both as accurately depicting what they purported to depict, and then they were admitted (see *Johnston v. State*, 232 Ga. 268, 270-271 (206 SE2d 468)). The fourth negative and photograph apparently were depictions of appellant. The evidence was objected to on grounds that no chain of custody was proved which would establish where the photos and negatives came from thereby not eliminating the possibility that no tampering with the film and negatives had occurred. There was no direct evidence at trial, nor in the record, of the origin of the negatives and photos, how the state obtained them or where and by whom the film was developed. The state argued in closing, however, that the negative of appellant attached to a continuous strip of negatives of the victim's family at least inferentially proved appellant had been in possession of the stolen camera at some time.

On appeal, appellant contends only that the photos and negatives were the fruits of an illegal search because there were no grounds for arrest. Not having any evidence pointing to where the photographs came from or where they were found, we cannot find they were the fruits of an illegal search of some place other than the point of arrest. The transcript of the motions hearing, upon which the trial judge expressly denied appellant's motion to suppress, contains no showing that appellant ever made a motion to suppress evidence obtained in a search based upon the arrest. If there was any other transcript or record showing such evidence was sought to be suppressed, or if the record failed to show what happened in the proceedings, it was incumbent upon appellant to have such transcript supplied to this court, or to have a record completed by the trial court and transferred here,

and his failure to do so leaves us with nothing to decide in that regard. *Roper v. State*, 251 Ga. 95, 97 (303 SE2d 103); *State v. Hart*, 246 Ga. 212, 213 (271 SE2d 133); *Zachary v. State*, 245 Ga. 2, 4 (262 SE2d 779). Without a transcript, we are not authorized to find the trial court erred in its ruling. *Hammond v. State of Ga.*, 168 Ga. App. 508 (308 SE2d 701).

In any event, we can say in this case that, assuming as appellant alleges on appeal that the film was the fruit of a search incident to the arrest, the arrest was made with probable cause and therefore the search of the van, including any containers therein, was legal. *Parker v. State*, 172 Ga. App. 540 (4) (323 SE2d 826); *Medlin v. State*, 168 Ga. App. 551 (309 SE2d 639); *Stoker v. State*, 153 Ga. App. 871 (267 SE2d 295); OCGA § 17-5-1. When the officer came upon a beige and brown customized van with shiny wheels and luggage rack, containing two men who matched the description given by a witness, one of whom had a master key to real estate lockboxes, and also containing a pile of gold jewelry (which was later never shown to have been stolen from these victims), and multiple listing real estate booklets, we think these facts raise probable cause authorizing an arrest which, we add, is not shown to have occurred until after appellant confessed to having a lockbox key.

We find no merit in appellant's claim that the photograph and negative were illegal evidence.

2. Appellant was not entitled to a directed verdict of acquittal. He contends the evidence was insufficient to support the verdict, but we find that a reasonable trier of fact could rationally find upon the evidence proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Turner v. State*, 151 Ga. App. 169, 170 (259 SE2d 171).

We must observe here that, although no such error was raised on appeal, the appellant was evidently concerned that the photograph and negative depicting appellant were put in evidence with no showing where they came from; obviously the appellant was concerned about the state's failure to show a "foundation." However, no chain of custody had to be shown, either to prove its origin or to establish there was no tampering. " 'There is no necessity of establishing a chain of custody (as to each item) where the evidence sought to be admitted is a distinct physical object that can be identified and differentiated by the senses on observation.' [Cits.]" *Norwood v. State*, 238 Ga. 199 (232 SE2d 70).

What really concerns appellant is the lack of the usual explanation of where a piece of evidence was found; however, that usual explanation is not a requisite "foundation" for admissibility, but instead generally provides the probative link between the defendant and the crime. In this unique case, the evidence itself — a continuous strip of

negatives depicting the victim's family and appellant evidently from the same roll of film in a stolen camera — provides its own inherent link between defendant and the crime. In this unique case, this was sufficient evidence upon which the jury could find appellant was at least connected to the stolen camera, without proof where it was found. The trial court charged the jury that they were the sole judges of whether the photograph and negative established any fact in evidence, and the jury found that they did. The essential function of evidence is that it be relevant, or bear either directly or indirectly upon the questions being tried by the jury. OCGA § 24-2-1. It can positively be said the photographs and negatives bear directly upon the question whether appellant burglarized the house and stole the camera containing the film, and the evidence is not incompetent for any reason.

3. The trial judge did charge the jury on the essential element of lack of authority of appellant to enter the victims' homes. There was proof in each burglary that the victims had never authorized anyone to enter their houses using a lockbox key and take their personal belongings, or to do anything other than show the houses for the purpose of sale.

4. The photograph was not "written scientific reports" under OCGA § 17-7-211 and appellant was not entitled under that code section to have it produced to him ten days prior to trial. We find appellant was not unfairly denied access to view this evidence.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in Divisions 1, 3, 4 and in the judgment.*

DECIDED SEPTEMBER 20, 1985 —
REHEARING DENIED OCTOBER 10, 1985 —

*Lee Sexton*, for appellant.
*Robert E. Keller, District Attorney, William L. McKinnon, Jr., Clifford A. Sticher, Assistant District Attorneys*, for appellee.