## A99A1055. ABNEY v. THE STATE.
(523 SE2d 362)

RUFFIN, Judge.

A Richmond County jury found Anthony Abney guilty of burglary. Abney appeals, asserting numerous errors, and we affirm.

1. In two enumerations of error, Abney argues that the evidence was insufficient to support his conviction. On appeal from a criminal conviction,

> the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(Punctuation omitted.) *Taylor v. State*, 235 Ga. App. 323, 324 (1) (509 SE2d 388) (1998).

Viewed in a light most favorable to the verdict, the evidence at trial showed as follows. On June 12, 1996, Glover Rushton Bailey III saw a man approach a house that Bailey knew to be vacant, remove a screen from a back window, and climb into the house. Bailey ran to a nearby business and dialed 911 to report a burglary in progress. While he was on the telephone, Bailey saw the man toss four chairs out of the window of the house and then climb back out. The man then carried the chairs around to the front of the house and placed them along the fence.

Deputy Gary McCord responded first to Bailey's 911 call. As he approached the house, McCord saw a man who matched the description of the burglar standing on the sidewalk near a stack of chairs. The man told McCord that he got the chairs from an abandoned cottage behind the house, and he gave his name as David Thomas. Bailey, who had remained in the area, then identified the man as the person he saw entering the house. McCord arrested the man, and the man gave a written statement identifying himself as Anthony Abney, denying that he entered the house, and claiming that he found the chairs in the yard of the house next door.

Later that day, McCord met Robert McGee at the house. McGee testified that he looks after the house for his mother, who owns it and

who has Parkinson's disease. McGee further explained that no one had lived in the house for two years, but the utilities had been maintained so that the property could be kept up. Upon inspecting the house, McGee and McCord noticed that the back window had been pried open, the curtain was pulled outside, and the window screen was leaning against the side of the house. McGee testified that Abney did not have permission to enter the residence or remove the chairs, which he identified as having come from the kitchen.

Burglary occurs when, "without authority and with the intent to commit a felony or theft therein, [a person] enters or remains within the dwelling house of another or any building . . . designed for use as the dwelling of another." OCGA § 16-7-1 (a). " 'Without authority' . . . is defined as 'without legal right or privilege or without permission of a person legally entitled to withhold the right.' " (Punctuation omitted.) *Brown v. State*, 143 Ga. App. 256, 257 (238 SE2d 258) (1977). Abney contends that the evidence was insufficient to establish that his entry into the residence was unauthorized because the only evidence as to whether he had authority was the testimony of McGee, who did not own the residence and did not live there. We reject this contention.

We have held that the testimony of an agent or caretaker of the property is sufficient to show that an entry was unauthorized. *Glisson v. State*, 165 Ga. App. 342-343 (3) (301 SE2d 62) (1983) (testimony of deacon of church who was responsible for maintenance and upkeep was sufficient to create jury question as to whether defendant's entry was without authority). McGee testified that he oversees the property in question for his mother. In addition, there was testimony that the residence was for sale and that the realtor had been dealing with McGee. There was no evidence that Abney was a lawful occupant of the residence. Under these circumstances, the evidence was sufficient to permit the jury to conclude that McGee was a caretaker of the property with knowledge as to who was permitted to enter, and that Abney was not so permitted. See id.[1]

2. Abney also contends that there was a fatal variance between the crime charged in the indictment and the proof offered at trial, in that the indictment charged him with entering the dwelling house of McGee, but the evidence at trial showed that McGee neither owned the house nor resided there. This contention is without merit.

We no longer adhere to

---

[1] Abney suggests that McGee was not competent to testify as to who had permission to enter the property because he himself did not occupy it. We have not required that a witness actually live on the property before he can testify to who has authority to enter it. See, e.g., *Glisson*, supra.

an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. (Cit.) Only if the allegations fail to meet these tests is the variance "fatal."

(Punctuation and footnotes omitted.) *Turner v. State*, 231 Ga. App. 747-748 (1) (500 SE2d 628) (1998). Here, the indictment definitely informed Abney of the charge against him and sufficiently identified the property in question. See *Manemann v. State*, 147 Ga. App. 747, 748-749 (4) (250 SE2d 164) (1978) (no fatal variance where burglary indictment alleged that property was owned by person who turned out to be the janitor, not the owner). The indictment did not mislead Abney in such a manner that impeded his ability to present a defense[2] or surprise him at trial, and Abney cannot be subjected to a subsequent prosecution for the burglary of the residence in question. See *McCarty v. State*, 157 Ga. App. 336 (1) (277 SE2d 259) (1981). Thus, there was no fatal variance.

3. Abney asserts that he received ineffective assistance of counsel at trial because his appointed attorney had a conflict of interest. Abney's trial counsel is married to a lawyer in the district attorney's office who prosecuted Abney in a previous, unrelated case. Abney raised no objection at trial concerning this alleged conflict of interest. During a hearing on his motion for new trial, Abney explained that a conflict existed because trial counsel "sleeps with [his wife], he don't sleep with me." When pressed to explain what trial counsel could have done differently, however, Abney failed to provide any specific examples and stated that he could not remember. Trial counsel testified that he did not discuss Abney's case with his wife and that his wife was not involved in it. Thus we uphold the trial court's finding that trial counsel was not ineffective.

In order to prevail on a claim of ineffective assistance of counsel,

---

[2] Abney asserts that had he known the true owner of the property, he could have obtained from her information concerning "the nature and location of personal property located in and around the building." The evidence showed, however, that McGee maintained the residence and that his mother, who was ill, did not. Abney fails to show why he could not have obtained information about personal property in the house from McGee, who was more likely to know.

the defendant must show (1) that counsel's performance was deficient and (2) that the defendant was prejudiced by the deficient performance — i.e., that there was a reasonable probability that the trial would have turned out differently but for counsel's deficient performance. *Leon v. State*, 237 Ga. App. 99, 105 (4) (513 SE2d 227) (1999). A finding by the trial court that the defendant did not receive ineffective assistance of counsel "will be affirmed unless clearly erroneous." (Punctuation omitted.) Id.

To prove ineffective assistance of counsel based on a conflict of interest on the part of trial counsel, "a defendant who raised no objection at trial . . . must prove that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." (Punctuation omitted.) *Fogarty v. State*, 231 Ga. App. 57, 59 (3) (497 SE2d 628) (1998). With respect to attorneys whose spouses are affiliated with opposing counsel, the Supreme Court has held that

> [a] per se rule of disqualification on the sole ground that an attorney's spouse is a member of a firm representing an opposing party would be not only unfair to the lawyers so disqualified and to their clients but would also have a significant detrimental effect upon the legal profession. . . . While we cannot disagree with the proposition that the marital relationship may be the most intimate relationship of a person's life, it does not follow that professional people allow this intimacy to interfere with professional obligations.

(Footnote omitted.) *Blumenfeld v. Borenstein*, 247 Ga. 406, 408-409 (276 SE2d 607) (1981). Accordingly, "absent a showing that special circumstances exist which prevent the adequate representation of the client, disqualification based solely on marital status is not justified." (Punctuation omitted.) *Jones v. Jones*, 258 Ga. 353, 354 (369 SE2d 478) (1988).

Here, Abney showed no actual conflict of interest on the part of his trial counsel and no deficiencies in counsel's performance. Abney argues that his attorney failed to locate a witness who could have provided favorable testimony for him. Abney admitted, however, that he knew only the witness' first name and last known address and that she "was the type of person that kept moving." Trial counsel testified that he spent a couple of hours looking for the witness but could not find her. This does not constitute ineffective assistance. See *Harper v. State*, 232 Ga. App. 224, 226-227 (2) (c) (501 SE2d 591) (1998). Abney also argues that counsel failed to ask the State's eyewitness, Bailey, during cross-examination about an alleged dispute he had with Abney the week before the burglary. But counsel *did*

question Abney about the dispute, and Abney fails to show any prejudice from the failure to cross-examine Bailey on the same point. Once again, we find no ineffective assistance. See *Mitchell v. State*, 220 Ga. App. 264, 266 (469 SE2d 707) (1996).

4. Abney contends that the trial court erred in denying his motion for a jury view of the crime scene. According to Abney, a visit to the scene would have shown the jury that eyewitness Bailey could not, as he claimed, have seen Abney exit the window of the residence from the building where he called 911 to report the burglary. "The decision to allow the jury to view a scene is discretionary with the trial court, and will not be overturned unless there is a clear abuse of discretion." (Punctuation omitted.) *Wingate v. State*, 188 Ga. App. 730, 731 (2) (374 SE2d 224) (1988). We find no abuse of discretion here. As Bailey testified that he saw Abney climb into the window *before* Bailey went to the nearby building to call 911, the jury could have concluded that Abney entered the building even if Bailey did not see him exit. Moreover, at the hearing on Abney's motion for new trial, trial counsel testified that when he visited the crime scene, he found that the back yard of the residence was not visible from Bailey's vantage point, but the window, which was "elevated somewhat," was visible. Thus, it appears that the jury view would have bolstered Bailey's testimony rather than undermined it.

5. Finally, Abney asserts that the trial court erred in denying his motion for mistrial when the State improperly placed his character in issue. Deputy McCord testified that Abney initially identified himself as David Thomas, but when he brought Abney to police headquarters, "about five or ten other deputies said, 'Mr. Abney, what are you doing. . . .'" Abney's attorney sought a mistrial, arguing that the officers' recognition of Abney was prejudicial and brought his character into evidence. The trial court denied the motion on the ground that there was no evidence about how the officers knew Abney. We uphold the trial court's ruling that McCord's testimony that other officers were familiar with Abney did not necessarily suggest prior criminal conduct on the part of Abney and did not require a mistrial. See *Barrs v. State*, 202 Ga. App. 520 (1) (414 SE2d 733) (1992); *Truitt v. State*, 168 Ga. App. 616-617 (1) (309 SE2d 895) (1983).

*Judgment affirmed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED OCTOBER 6, 1999.

*Harrison & Lamar, Kipler S. Lamar*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.