## A01A1676. TONEY v. THE STATE.
(558 SE2d 780)

PHIPPS, Judge.

A jury found Cleveland Toney guilty of two counts of armed robbery. He appeals, contending that the trial court erred by allowing an in-court identification tainted by a previous impermissibly suggestive one-man showup. He also contends that the evidence was insufficient to support his conviction. Because the record demonstrates that, under all the circumstances, the identification was reliable, and because the evidence was sufficient to support Toney's conviction, we affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed that at about 7:00 p.m. on October 7, 1999, Rosie Hodge and Bruce Wingate stood talking in the parking lot of a restaurant. Two men approached them from a wooded trail that descended a hill abutting the back of the parking lot. The men were wearing dark pants and white shirts. They pulled dark bandannas over their faces and, at gunpoint, demanded money and jewelry from Hodge and Wingate. Hodge threw her cosmetic bag and then ran. Wingate turned over jewelry and money to the men. The men then fled to the trail, which led to Cantrell Drive.

Meanwhile, Daniel Davis, at his home on Cantrell Drive near an entrance to the trail, had seen a black Ford Escort with a metallic silver design on its side stop in front of his house. Two men exited the car. They were wearing dark pants and bandannas or some other "dark objects" on their faces. The engine was left running, and the caution lights were flashing. Davis watched the two men, as they came within twenty to thirty feet of his house, walk onto the trail. Five or ten minutes later, Davis saw the same two men, this time running from the trail back to the car.

Within five minutes of the armed robberies, a police officer arrived on the crime scene. He interviewed the victims and then broadcast descriptions of the robbers and the direction in which they had fled. Police officers responded by going to that area of Cantrell Drive where the trail led. Based on reports from Davis and others, police canvassed the area for the Ford Escort and spotted one that matched the description approximately two or three miles from the

trail. Police stopped the car. Three men were in the car, and they were wearing dark pants and light shirts. Police took them into custody and found in the car two bandannas, one under the front passenger seat and one in the hatchback area. The bandannas were the same type as those the victims saw on the robbers and the same type of covering that Davis saw on the two men who entered the trail.

Within thirty minutes of the armed robberies, police had transported Davis to the area where the three men were being held. Davis sat in a police car as a police officer brought the three apprehended men, one at a time, into the spotlight of the police car to see whether Davis could identify any of them. Without hesitation, Davis identified Toney and another man as the two he had seen earlier. The two men were patrons of the convenience store where Davis worked. And at trial, Davis testified, "I know them from coming in the store, so that's how I identified them." Davis stated he had seen Toney "almost every day" because Toney was "in and out of the store" purchasing Newport cigarettes.

1. Toney contends that the trial court erred in admitting Davis's in-court identification because it was tainted by the one-man showup which he claims was impermissibly suggestive. Although showing suspects singly to a witness for identification purposes is inherently suggestive,[1] an identification need not be excluded as long as "under all the circumstances the identification was reliable notwithstanding any suggestive procedure."[2] Our inquiry here is whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification.[3] As enunciated in *Neil v. Biggers*,[4] to evaluate that likelihood, we consider factors that

> include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[5]

Applying these factors, we find that Davis had an excellent opportunity to view Toney around the time of the crime as Toney walked alongside his house to enter the trail. Davis had seen Toney and another man exit the Ford Escort, noting its distinguishing side

---

[1] *Killens v. State*, 184 Ga. App. 717, 720 (3) (362 SE2d 425) (1987).
[2] *Cleveland v. State*, 164 Ga. App. 478, 480 (1) (298 SE2d 22) (1982); *Killens*, supra.
[3] *Killens*, supra; *Cleveland*, supra.
[4] 409 U. S. 188, 199-200 (III) (93 SC 375, 34 LE2d 401) (1972).
[5] Id.; *Cleveland*, supra.

design. Davis appeared certain of his identification at the showup which took place within 30 minutes of the armed robberies and the time when Davis had seen Toney enter and later leave the trail that led to the crime scene. In addition, Davis recognized Toney as a regular customer at his place of employment — even recalling Toney's usual purchase, thus providing the in-court identification with an origin independent of the showup.[6]

Toney cites *Banks v. State*[7] in support of his argument that because the showup took place while he was in police custody and while a police light shone upon him, the in-court identification should not have been allowed. *Banks*, however, is factually distinguishable, and after consideration of the factors set forth in *Neil*,[8] the totality of the circumstances in *Banks* did not show that the victim's identification was reliable despite any suggestive procedures. There, the 83-year-old victim "could not see too well"; his attention was focused on an accomplice during the crime, and he admitted that he did not pay much attention to the face or the clothing of the person he later claimed was the defendant; the victim's description of the perpetrator given to police after the offense, but before the showup, differed in important respects from the defendant's appearance at the showup; the victim later denied giving a description of the perpetrator prior to the showup; and the in-court identification had no independent origin.[9]

Under the totality of the circumstances presented in this case, we find no substantial likelihood of irreparable misidentification. The trial court did not err in allowing Davis's in-court identification of Toney.[10]

2. Pointing out that the evidence was circumstantial, Toney contends that it was insufficient to support his conviction. On appeal from a criminal conviction, an appellant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the verdict.[11] We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient under the standard of *Jackson v. Virginia*.[12] Direct evidence is not required to support a conviction.[13]

---

[6] See *Killens*, supra at 721.
[7] 216 Ga. App. 326 (454 SE2d 784) (1995).
[8] Supra.
[9] *Banks*, supra at 329 (3).
[10] See *Salazar v. State*, 245 Ga. App. 878, 879-880 (1) (539 SE2d 231) (2000).
[11] *Hayes v. State*, 249 Ga. App. 857, 859 (1) (549 SE2d 813) (2001).
[12] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hayes*, supra.
[13] *Hayes*, supra at 860 (1).

A conviction may be based upon circumstantial evidence if the proved facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused. When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law. Further, while circumstantial evidence must exclude every other *reasonable* hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis.[14]

Construing the evidence in the light most favorable to the jury's verdict, we find that the jury rationally could have found from the circumstantial evidence that every reasonable hypothesis was excluded except that Toney was one of the men who committed the crimes. Both victims testified that two men wearing dark pants, light shirts, and bandannas emerged from the trail, took property from them at gunpoint, and then retreated back into the trail. Around the time of the robberies, Toney and another man were seen walking onto the trail that led to the crime scene and were seen shortly thereafter running out of the trail. Within 30 minutes, Toney was apprehended in a car that had been seen in the vicinity of the crime scene. He was wearing clothing that matched the description of that worn by the robbers, and the car contained two bandannas like the ones the robbers wore. We conclude that the evidence authorized the jury to find beyond a reasonable doubt that Toney was guilty of two counts of armed robbery.[15]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JANUARY 11, 2002.

*Hagler, Hyles & Adams, Clark C. Adams, Jr.,* for appellant.
*J. Gray Conger, District Attorney, Alonza Whitaker, Assistant District Attorney,* for appellee.

---

[14] (Citations and punctuation omitted; emphasis in original.) Id.
[15] See *Jackson,* supra; *Hayes,* supra; *State v. Watson,* 239 Ga. App. 482, 484-486 (2) (520 SE2d 911) (1999).