## A03A0604. EDWARD v. THE STATE.
### (581 SE2d 691)

JOHNSON, Presiding Judge.

After being tried by a judge sitting without a jury, Isaac Edward, Jr. was found guilty of burglary. He appeals from the conviction, challenging the sufficiency of the evidence and claiming that there was a fatal variance between the allegations of the indictment and the evidence produced at trial. Neither claim has merit, so we affirm the conviction.

1. Edward contends that the evidence of his guilt was purely circumstantial, and that the trial judge should have believed the co-defendant's trial testimony that Edward was not involved in the commission of the crime. This enumeration presents no basis for reversal.

On appeal, this court does not weigh the evidence or assess the credibility of witnesses; rather, we determine whether the evidence, viewed in a light most favorable to the verdict, was legally sufficient under the standard set forth in *Jackson v. Virginia*.[1] So viewed, the evidence shows that Talbot Jones lived with his sisters in the house on Georgia Highway 111 North, in Cairo. When Jones' sisters returned home one afternoon, they realized that someone had broken into their house. The back doors were open, a window was broken, a lock had been tampered with, and the family's belongings were strewn about the floor. Money and a cedar box were missing from Jones' bedroom.

When sheriff's deputies arrived at the home, they found on the floor, amidst old papers and other items, several white envelopes containing large amounts of money. The money was printed in the 1930s, 1940s, and 1950s, but had never been folded and was still crisp. Many of the bills bore sequential serial numbers, as if they had never been circulated.

A few days later, a bank employee called the sheriff's department to report that Germaine Miles had made a deposit of $500 in "old" money. The deputy examined the money deposited and saw that it was printed in the 1930s, 1940s, and 1950s, but was in brand new condition. Making the connection between the money deposited and the money seen at the burglarized home, officers went to Miles' home to question him about the burglary. They arrived to find Miles and Edward, who is Miles' stepfather, at the home.

Deputies took Miles to the station for questioning. After being read his *Miranda* rights, Miles told officers that on the day of the burglary, he drove Edward to a house on Highway 111 North.

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *O'Connor v. State*, 255 Ga. App. 893, 895 (1) (567 SE2d 29) (2002).

Edward, who was carrying a screwdriver, told Miles to drive around for awhile and then come back to pick him up. Miles complied, and when he returned to pick Edward up, he saw that Edward was holding a plastic grocery-type bag with several white envelopes in it. The envelopes contained a large amount of money, as much as $15,000. The men went back to Miles' residence, and Edward offered to split the money with Miles. Miles declined the offer, but told Edward that he could buy Miles a car.

The day after the burglary, Edward bought Miles a car for $1,500 in cash. A day later, Edward returned to the dealership and paid another $3,074 in cash for a second vehicle. Edward also gave Miles $780 to keep.

Miles pled guilty to the burglary before trial. At Edward's trial, in direct contrast to his pre-trial statement, Miles denied any involvement in the burglary, and testified that he had "no idea" whether Edward was involved in the crime. Miles testified that he did not remember if he made the earlier statement, or if the information included in the earlier statement was true.

Direct evidence of Edward's guilt was not required.[2] A conviction may be based upon circumstantial evidence if the proven facts are not only consistent with the hypothesis of guilt, but exclude every other reasonable hypothesis but the guilt of the accused.[3] When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the trier of fact.[4]

Construing the evidence in the light most favorable to the verdict, we hold that the trier of fact could have found from the circumstantial evidence that every reasonable hypothesis was excluded except that Edward committed the burglary. There was evidence that Edward, carrying only a screwdriver, was dropped off near Jones' home, that he emerged a short time later with envelopes containing large amounts of money, that money was taken from Jones' home, that Jones kept unusually old, crisp money in envelopes in his home, that Edward made large cash purchases over the next two days, that Edward gave his stepson a large amount of money, and that the stepson made a deposit of a large amount of unusually old, crisp money shortly after the burglary. The evidence introduced by the state was sufficient to enable any rational trier of fact to find Edward guilty beyond a reasonable doubt of burglary.[5]

---

[2] See *Toney v. State*, 253 Ga. App. 231, 233 (2) (558 SE2d 780) (2002).
[3] Id. at 234.
[4] Id.
[5] See *Smith v. State*, 253 Ga. App. 789, 791 (560 SE2d 348) (2002).

2. Edward contends there was a fatal variance between the allegations of the indictment and the evidence at trial. The indictment stated that the burglary was committed at "the dwelling house of another, to wit: Talbot Jones, located [on] Hwy 111 North, Cairo, Grady County, Georgia." Edward points to the testimony of Jones' sister that Jones lived in the house with her and another sister. Edward urges that the state produced no evidence that Jones actually owned the house. There was no fatal variance.

Our courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality.[6] The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused.[7] The fatal variance rule requires that: the allegations definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and the allegations must be adequate to protect the accused against another prosecution for the same offense.[8]

The indictment definitely informed Edward of the charge against him and sufficiently identified the property in question.[9] Our analysis does not change simply because two other family members also lived in the home, or because no deed to the property was introduced into evidence. Ownership is not an essential ingredient to proving that the premises entered were "the dwelling house of another" within the meaning of our burglary law.[10] Even assuming that someone other than Jones owned the house, the indictment did not mislead Edward in such a manner that impeded his ability to present a subsequent defense or surprise him at trial, and he cannot be subjected to a subsequent prosecution for the burglary of the residence in question.[11] Thus, Edward has failed to show that any variance was fatal.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED APRIL 29, 2003.

*Robert R. McLendon IV*, for appellant.

---

[6] *Shackelford v. State*, 179 Ga. App. 595, 596 (347 SE2d 346) (1986).

[7] Id.

[8] *Partridge v. State*, 187 Ga. App. 325, 327 (3) (370 SE2d 173) (1988).

[9] See *Abney v. State*, 240 Ga. App. 280, 282 (2) (523 SE2d 362) (1999).

[10] (Punctuation omitted.) *Mathews v. State*, 258 Ga. App. 29, 32 (2) (572 SE2d 719) (2002); *Abney*, supra.

[11] *Abney*, supra.

*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney*, for appellee.