## A04A1715. RUBALDINO v. THE STATE.
(611 SE2d 68)

ADAMS, Judge.

Javier Hernandez Rubaldino was convicted by a jury of one count of aggravated assault and one count of burglary. He now appeals the trial court's denial of his motion for new trial. We affirm.

In considering a criminal appeal, this Court views the evidence in the light most favorable to the verdict. Appellate courts do not weigh the evidence or determine witness credibility but only determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Smith v. State*, 269 Ga. App. 506 (604 SE2d 587) (2004).

Viewed in that light, the evidence showed that Fernando Perez-Vega occupied a house in Dalton, Georgia with several other men including Gerald Romero, Rubaldino's friend. Perez-Vega had a bedroom in the house and split the rent and expenses with the other occupants. On the evening of December 29, 2002, Rubaldino drank four beers before arriving at the house to visit Romero, and continued to drink after his arrival. Romero testified at trial that together, he and Rubaldino drank at least 24 beers. Rubaldino admitted drinking a total of ten beers that night. Perez-Vega was out that night, but

---

returned home around midnight to find Rubaldino and Romero in the living room, with beer bottles all around.

Perez-Vega did not want Rubaldino in his house and told him to leave. When Rubaldino did not leave, Perez-Vega went into his roommate's bedroom to watch television. Rubaldino later followed, pushing the door open and entering the room with his fists clenched, looking angry. Rubaldino announced that someone was paying him $100 to kill Perez-Vega. Rubaldino then pushed Perez-Vega, who pushed him back and both men fell to the floor. Perez-Vega did not see a knife in Rubaldino's hand at the time. When they fell, Perez-Vega was on top of Rubaldino. Perez-Vega, who was unarmed, said he held Rubaldino down in an effort to calm him, but Rubaldino continued to act aggressively. As Rubaldino kept struggling, he stabbed Perez-Vega in the stomach. Perez-Vega said that he did not see Rubaldino stab him, but rather felt the sensation of flowing blood, followed by pain.

Afterward, Perez-Vega went into the living room to call 911, and Rubaldino walked outside. While Perez-Vega was talking to the 911 operator, Rubaldino remained outside with his fists clenched, gesturing to Perez-Vega and taunting him to "come on, come on." Rubaldino was standing at the corner of the house. When police arrived, Perez-Vega saw him open his clinched hands. Police arrested Rubaldino and later found a pocketknife in the area where Rubaldino had been standing. The knife was in the extended position and had blood on it.

Rubaldino admitted at trial that the knife was his. Rubaldino also admitted that Perez-Vega had been injured by the knife during their struggle, but he claimed that he only used the knife in self-defense.

1. Rubaldino first asserts that the trial court erred in denying his motion for a directed verdict on the burglary charge because a fatal variance existed between the indictment and the evidence at trial on that charge. The indictment alleged that Rubaldino committed burglary by entering the dwelling house of Perez-Vega without authority and with the intent to commit assault, a felony. But Rubaldino contends that the evidence showed that he had Romero's permission to enter the house. The state counters that the burglary occurred when Rubaldino entered the bedroom of the third tenant without permission and with the intent to assault Perez-Vega. In addition, the state notes that prior to Rubaldino's entry into the bedroom, Perez-Vega had directed Rubaldino to leave the house.

Georgia courts do not follow an overly technical application of the fatal variance rule, but focus instead on materiality. *Edward v. State*, 261 Ga. App. 57, 59 (2) (581 SE2d 691) (2003). Thus, not every variation between allegation and proof is fatal. Rather, our task is to

determine whether the claimed variance affected Rubaldino's substantial rights. "The fatal variance rule requires that: the allegations definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and the allegations must be adequate to protect the accused against another prosecution for the same offense." Id.

Here, even assuming that Rubaldino initially entered the house with permission, the jury was authorized to find that he made an unauthorized entry into one bedroom of the house with the intent of assaulting Perez-Vega. The burglary statute outlaws the unauthorized entry into "any building . . . or any room or any part thereof" with the requisite intent. OCGA § 16-7-1 (a). See also *Jenkins v. State*, 217 Ga. App. 655, 655-656 (1) (458 SE2d 497) (1995) (proof of unauthorized entry into unoccupied classroom of public school, possession of stolen property and attempt to flee supported burglary conviction). And the fact that the room was under the authority of someone other than the individual listed in the indictment does not create a fatal variance. See *Abney v. State*, 240 Ga. App. 280, 282 (2) (523 SE2d 362) (1999) (no fatal variance where individual alleged in indictment to have owned the house neither owned it nor resided there); *Manemann v. State*, 147 Ga. App. 747, 748-749 (4) (250 SE2d 164) (1978) (no fatal variance where burglary indictment alleged that property was owned by individual who was actually the janitor). Cf. *Mathews v. State*, 258 Ga. App. 29, 32-33 (2) (572 SE2d 719) (2002) (proof that individual identified in indictment as owner of burgled building not required where state proves unauthorized entry).

Despite these technical variances between the indictment and the proof, we find that the indictment did not mislead Rubaldino to the extent that it impeded his ability to defend himself, did not result in any surprise to him at trial nor does the possibility exist that he could be subjected to a second prosecution for burglary under the same facts. Accordingly, no fatal variance occurred.[1] *Abney*, 240 Ga. App. at 282; *Manemann*, 147 Ga. App. at 748-749; *Mathews*, 258 Ga. App. at 32-33.

2. Rubaldino also asserts that the evidence was insufficient to support his conviction of the charges against him. Based upon our review of the record, however, we find that the evidence was sufficient for a rational trier of fact to find Rubaldino guilty of the crimes charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d

---

[1] Although Rubaldino also takes issue with the trial court's jury charge on the definition of burglary, we find that the trial court correctly charged the jury in accordance with the indictment.

560) (1979); *Williams v. State*, 268 Ga. App. 384, 387 (1) (b) (601 SE2d 833) (2004); *Jenkins v. State*, 217 Ga. App. at 656 (1).

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 21, 2005.

*Avrett, Ponder & Withrock, William B. Barnwell*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.