**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**December 21, 2012**

# In the Court of Appeals of Georgia

A12A1735. NEWTON v. THE STATE.

ADAMS, Judge.

David Allen Newton was tried by a jury and convicted of burglary, theft by taking, and first degree forgery for taking jewelry while touring a home that he claimed he was interested in purchasing and using a fictitious name on a brokerage agreement. He was sentenced to twenty years for burglary, ten years for theft by taking to run concurrently with the burglary sentence, and ten years for forgery to run consecutively to the burglary sentence. The trial court ordered that upon service of nine years in confinement, Newton could serve the remaining twenty-one years on probation. On appeal, Newton challenges the sufficiency of the evidence to support his burglary conviction. He does not appeal his conviction for theft by taking or forgery.

Viewed in the light most favorable to the verdict, the evidence showed that a man identifying himself as David Flynn contacted Jessica Harris, a real estate agent in Douglas County, and told her that he was relocating from New Jersey and wanted to look at houses in the $600,000 to $1,000,000 price range. Harris met with the potential buyer and presented him with a buyer's brokerage agreement, which he signed as David Flynn. He provided a driver's license with his picture and the name David Flynn. They spent two full days looking at houses. At trial, Harris identified the defendant, David Newton, as the potential buyer she had known as David Flynn.

One of the houses they planned to tour was owned by another real estate agent, Cynthia Murphy. Harris testified that the house did not have a lockbox so she called Murphy to let them in. After letting them into her house, Murphy left. While Harris and Newton were upstairs looking at the master bedroom, Harris heard a door shut and ran downstairs. Murphy had returned, and she spoke briefly to Harris while Newton was alone in the master bedroom. Murphy and Harris both went upstairs to look for Newton. Murphy checked a chest in her closet where she kept two boxes of jewelry. She saw that the two boxes were still there, but did not open them at the time. Harris found her client, they finished touring the house and left. When they got back

to her car, Harris saw Newton reach into the backseat where he had stored a canvas tote bag and do something with the bag before getting into her car.

A week to ten days later, Murphy received a call from her managing broker to check her house for missing items. She checked her jewelry boxes and they were empty. The value of her missing jewelry was approximately $20,000. Murphy testified that from the time Newton toured her house until she discovered her jewelry was gone, only immediate family members had access to the area where her jewelry was stored.

Shay Brooks with the Douglas County Sheriff's Office investigated the theft from Murphy's home. After obtaining the paperwork Harris had on David Flynn , Brooks determined that the New Jersey license in the name of David Flynn was fake and received information that David Flynn was actually David Newton.

The State introduced similar transaction evidence of a theft from a home in Sandy Springs. Kelly Boudreau, a real estate agent in Atlanta, testified that she showed Newton a house as a potential buyer, and the following day, the homeowners notified her that a necklace had been taken from the house. Boudreau testified that she was not with Newton at all times while they were looking at the house. The detective investigating that theft obtained a photograph of Newton, showed it to real

estate agents, and put out a buyer beware notice on the real estate listing service. He obtained an arrest warrant for Newton for theft of the necklace, which was valued at $5,000.

After he was convicted, Newton filed motions for new trial. At the hearing on those motions, counsel for Newton argued that the evidence was insufficient to support the burglary conviction because there was no evidence that he entered the house without authority. The trial court denied the motion, noting that Newton never had authority to enter the house because only a person named David Flynn was so authorized.

The burglary statute applicable when the offense was committed provided that "[a] person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . ." OCGA § 16-7-1 (a). The indictment in this case charged Newton with

> enter[ing] the dwelling house of another without authority and with the intent to commit a theft therein, to wit: Said accused did enter a room within the dwelling house of Cynthia Murphy without authority in order to commit a theft therein.

The jury was instructed that

4

[a] person commits the offense of burglary when, without authority and with the intent to commit a theft therein, he enters a room in the dwelling house of another. To constitute the offense of burglary, it is not necessary that it be shown that a break-in occurred or that an actual theft was accomplished.

Newton's only claim on appeal is that the State failed to prove that he entered Murphy's house or a room in her house "without authority." He points out that he was escorted into Murphy's house by Harris and argues that there was no evidence that he did not have permission to be in Murphy's house or any room in her house at that time. The State's response is that a fictitious person named David Flynn was granted permission to enter Murphy's home and that David Newton never had permission to enter the house or the closet where Murphy's jewelry was stored.

"'Without authority' . . . is defined as 'without legal right or privilege or without permission of a person legally entitled to withhold the right.'" (Citation omitted.) *Abney v. State*, 240 Ga. App. 280, 281 (1) (523 SE2d 362) (1999). "Even assuming that the evidence at trial showed that [Newton] intended to commit a theft when he first entered [Murphy]'s residence, there was no evidence that [Newton] entered the home 'without authority.' There was no indication, for example, that [Newton] forced his way in or that [Murphy] denied [Newton] permission to enter."

5

*Bell v. State*, 287 Ga. 670, 673 (1) (c) (697 SE2d 793) (2010). In fact, Murphy let Harris and Newton, her client, into her house and left them there. There is no evidence that she specified any rooms that were off limits during their tour. Cf. *In the Interest of S.K.*, 289 Ga. App. 672, 675 (2) (658 SE2d 220) (2008) (evidence showed that defendant initially entered house with permission, but there was no evidence that he had permission to enter locked bedroom). And there is no evidence that Murphy was only willing to let someone she thought was named David Flynn into her house at that time. Murphy testified that Harris introduced her to her client , but there is no evidence that his identity had anything to do with whether he would be authorized to enter the house. Although Newton's use of a fictitious name was relevant to the forgery charge, it had no real significance for the burglary charge – Murphy gave Harris's client permission to enter her house that day, regardless of his name.

Relying on *Gosdin v. State*, 176 Ga. App. 381 (336 SE2d 261) (1985), the State argues that neither Murphy nor Harris authorized anyone to enter the house for any purpose other than viewing the home for potential purchase. In *Gosdin*, a part-time real estate agent was charged with four counts of burglary for using a lockbox key to enter houses that were for sale and take valuables. Id. It appears that one of the issues on appeal was whether the trial court had instructed the jury on the essential element

6

of lack of authority to enter the victims's houses. Id. at 384 (3). The court held that the trial court had so instructed the jury and then stated that "[t]here was proof in each burglary that the victims had never authorized anyone to enter their houses using a lockbox key and take their personal belongings, or to do anything other than show the houses for the purpose of sale." Id. This language, regardless of its purpose or significance in *Gosdin*, does not change the fact that the State was required to prove that Newton's initial entry into Murphy's house was without authority. OCGA § 16-7-1 (b), formerly OCGA § 16-7-1 (a). Possessing the intent to commit a theft upon entry is not the same as entry without authority. See *Bell*, 287 Ga. 670, 673 (1) (c). In fact, our Supreme Court has "categorically reject[ed] the position that the element of an unlawful entry may be established solely by proof that an accused had the intent to commit a theft or other felony within another's premises . . . [as] contrary to the plain language of the statute . . . ." *Thompson v. State*, 271 Ga. 105, 106 (1) (519 SE2d 434) (1999). And this is not a case where we must determine if Newton's authority ceased at some point because neither the indictment nor the jury instructions included the burglary statute's language about remaining in the dwelling without authority. See *Bell*, 287 Ga. 670, 673 (1) (c) ("evidence that, once inside the apartment, [defendant] assaulted [victim] and sought to rob him would support a

7

conviction for 'remain[ing]' in the dwelling without authority, OCGA § 16-7-1 (a), but that portion of the burglary statute was neither charged in the indictment nor included in the jury instructions in this case."); Cf. *Hambrick v. State*, 174 Ga. App. 444, 447 (1) (330 SE2d 383) (1985) (although defendant "initially had [] authority to enter and remain for a friendly visit, there was sufficient evidence, including testimony of the victim's struggle with [defendant], to create a jury question regarding whether the authority to remain ceased at the time the offensive, aggressive behavior began.").

Because the evidence did not prove that Newton entered Murphy's home without authority, we reverse the burglary conviction. See *Bell*, 287 Ga. 670, 673 (1) (c). Newton's remaining convictions are affirmed, and the case is remanded for resentencing.

*Judgment affirmed in part and reversed in part, and case remanded. Barnes, P. J., and McFadden, J., concur.*