## 66881. ANDERSON v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant, William Anderson, appeals his conviction of armed robbery. Ms. Estelle Hardy, assistant manager of Flash Foods — a convenience store in Jamestown, Ware County, Georgia — was working alone on the morning of May 4, 1982. A man approached her with a gun and said: "Mrs., I'm not going to hurt you." He directed her to place the money from the cash register and the safe in a bag, and then had her lie down on the floor. When she heard someone else enter, she got up and told the customer that she had just been robbed. She called the police, reported the robbery, and gave them a description of the robber. Two people were entering the store as the robber was leaving. He held the door open for one of them. She had parked beside the car waiting for him outside and had seen the driver. She described the car for the police. The other customer described the car as an LTD, burgundy top, grayish bottom. The driver had a black beard. The robber was fat, had a red beard, with reddish colored hair. The police put out a radio bulletin for a burgundy over gray vehicle, driver with black hair, black beard, heavyset. Passenger had red hair, red beard, short, approximately 240 pounds, pot-bellied.

Sharon Byers lives next door to Yawn's grocery in Bacon County. On May 4th a car came into her driveway and went around her house into her backyard. The passenger got out of the car and walked toward another road behind her house. The car left. She called the sheriff. Her neighbor, Nola Yawn, saw the same car drive behind the Byer's house and saw a man come from behind the garage — walking real fast. He was heavy, big stomach, and was wearing a white t-shirt and dark pants.

Roger McQuaig, a dog handler for Ware County, pursued the man into the woods behind Byer's house with his bloodhound. In

approximately 40 minutes his dog led him to the defendant "in very thick woods, sitting down." Harold Gwinn, Ware County Sheriff's Department, searched the area behind Byer's house and found "a bank bag" next to a fence. It contained rolls of silver and some change. It was identified by Estelle Hardy as the bag given to the robber.

Giles Tallent, a Deputy Sheriff for Bacon County, heard the radio bulletin and started a search for the robber's vehicle. He met an auto fitting the description with two white males in it, turned around and pursued it. He saw the car leave Yawn's grocery with only one person. He pulled the car over and had the driver exit the car. The driver was Hubert Anderson — the defendant's brother. He had a black beard. The officer asked for and was given permission to search the car. A gun was found in the glove compartment.

The two customers who entered Flash Foods as the robber was leaving picked out the photograph of the defendant from a book containing 200 to 300 photos. In court, they identified the defendant as the man they met leaving the store. Estelle Hardy identified the defendant in a lineup held in the county jail after viewing him and then having all of the people in the lineup say aloud: "Mrs., I'm not going to hurt you."

The defendant appeals. *Held:*

1. The refusal of the trial court to suppress identification of the defendant at the lineup, and later in court, is enumerated as error. Tom Ford was an inmate of the Ware County jail on May 4 and participated in the lineup in which Estelle Hardy identified the defendant as the perpetrator of the robbery. He testified that the people participating in the lineup were dissimilar and that Anderson was covered with leaves and dirt. He saw a lady's face looking through a small window at them in the lineup. She shook her head and backed away. Then a man stepped forward and pointed his finger at them and she looked over his finger. After that, each had to say: "Missy, I ain't going to hurt you." Then she identified the defendant.

Allen Fricks also participated in the lineup. He was standing next to the defendant. He saw a lady looking through the window and then a man stuck his hand up there and pointed in the general direction of him and the defendant. The lady shrugged her shoulders and walked away. He was in the courtroom in June when Detective Herrin brought the same lady into the room and walked up and down the aisle with her and pointed in the direction of him and the defendant. Anderson left the courtroom after Herrin pointed toward them.

Estelle Hardy, Detective Lieutenant Herrin, GBI Agent Ellis, and Detective Harry Watts, testified that there were no suggestions

made to Hardy as to which person to select in the lineup and no one pointed at anyone during the lineup. Hardy said she did not notice any leaves or debris on the defendant. When she first viewed the lineup she thought she knew who the robber was but "wasn't positive . . . and I wanted to be sure before I chose somebody . . . I told them that maybe if I heard their — his voice." Following the vocal show-up, Hardy identified the defendant as the robber. She and Detective Herrin testified that they did go into the courtroom in June to see if she could again identify the defendant. Detective Herrin stated that Anderson was in the courtroom when he first went in but when he left to find Hardy and bring her in the courtroom Anderson left. Hardy looked for Anderson but he was not there and she did not identify anyone.

Pre-trial identification procedures are subject to the due process guarantee of fair trial. *Heyward v. State,* 236 Ga. 526, 527 (224 SE2d 383). "A lineup is not per se unconstitutional." *Mitchell v. State,* 236 Ga. 251, 255 (223 SE2d 650). The evil to be avoided is the likelihood of misidentification of an accused. The holding of Neil v. Biggers, 409 U. S. 188, 196-201 (93 SC 375, 34 LE2d 401) is that a two step analogy is to be used. First, an impermissibly suggestive identification procedure is to be avoided. Only if it was suggestive need the court consider the second question — whether there was a substantial likelihood of irreparable misidentification. *Payne v. State,* 233 Ga. 294, 299 (210 SE2d 775). A photograph of the lineup was included in the record. It is amazing that the police could assemble so many short, fat, pot-bellied men, with beards, in such a short time — two hours. We find nothing suggestive about the lineup. It would be extremely difficult to find a group of men with characteristics of short, fat, pot-bellied, red-headed, with full red beards.

The evidence is in conflict as to whether or not the defendant had dirt, leaves, and other debris on his person during the lineup. It was also contested as to whether anyone pointed at the defendant during the lineup and in the courtroom. Defendant's witnesses stated these acts happened. The victim and the police officers deny they occurred. The trial court resolved these issues in favor of the state. We will not reverse the finder of fact absent a clear abuse of discretion. We have found no abuse of discretion.

In any event, "the question is whether under the 'totality of the circumstances' the witness was irrevocably committed to the desired identification by the identification procedure used." *McClesky v. State,* 245 Ga. 108, 111 (263 SE2d 146); Manson v. Brathwaite, 432 U. S. 98, 106 (97 SC 2243, 53 LE2d 140). " 'Even if the pre-trial identification is "tainted" the in-court identification is not constitutionally inadmissible if it does not depend upon the prior

identification but has an "independent origin." ' " *Code v. State*, 234 Ga. 90, 99 (214 SE2d 873). In the instant case, the victim made it clear that her identification was based upon her observation of the defendant during the robbery. Thus, her identification had an independent basis other than viewing Anderson in the lineup. Hence, her identification testimony is reliable and admissible. *Jones v. State*, 238 Ga. 51 (1) (230 SE2d 865); *Burrell v. State*, 239 Ga. 792, 793 (239 SE2d 11); *McClesky v. State*, 245 Ga. 108, 111, supra. These enumerations are without merit.

2. The evidence of record is sufficient to enable a rational trier of fact to find the existence of the offense of armed robbery beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 29, 1983.

*James D. Clark*, for appellant.

*C. Deen Strickland, District Attorney, Harry D. Dixon, Jr., Assistant District Attorney*, for appellee.