## 71982. BENTON v. THE STATE.
### (342 SE2d 722)

BANKE, Chief Judge.

The defendant appeals his convictions of three counts of entering a motor vehicle with intent to commit theft (OCGA § 16-8-18) and one count of theft by taking (OCGA § 16-8-2) of a motor vehicle. In addition to these four offenses, the defendant was also indicted for one count of arson in the first degree and an additional count of entering a motor vehicle with intent to commit theft; however, the trial court directed a verdict in his favor with respect to these latter two charges. The defendant's primary contention on appeal is that the trial court erred in admitting certain identification testimony by the arresting officer.

At about 9:30 on the morning of September 30, 1984, Ms. Janie Harmon of 33 Reeves Street in Norcross, Georgia, discovered that her CB radio was missing from her 1974 Pinto station wagon. Also missing were a screwdriver, a pair of pliers, and a can of mace, all of which had been in the car's glove compartment. That same morning, Lester Cash of 44 Reeves Street in Norcross discovered that his 1971 Ford van had been broken into and that the ignition key, which he had left inside the vehicle the previous night, had been taken, along with a tire gauge which had been inside the glove compartment. Jeryl Sadler, a resident of an apartment complex located a short distance away from the homes of the first two victims, discovered that morning that her Ford Ranger pickup truck had been broken into and that, among other items, a hammer, a screwdriver and a pair of vise grips had been taken from it. Finally, Mr. Kevin Farrell, who resided a few hundred feet from Sadler's apartment complex, was awakened just before sunrise that morning by a bump on his garage door. He looked outside just in time to see someone driving away in his brown, 1981 Chevette automobile.

The Norcross Police Department was immediately notified of the theft of the Farrell vehicle, and Officer W. C. Tullis was dispatched to the home to take a report. Some 20 minutes after taking the report, Officer Tullis spotted a brown Chevette automobile, within a mile and a half of the Farrell home, which met the description of the stolen vehicle. Officer Tullis attempted to block the path of this vehicle with his patrol car, but the driver avoided him by leaving the roadway and going up over the curb. Officer Tullis testified that he had his headlights on bright at this time and was able to see the driver's profile. A chase ensued, which ended when the driver of the Chevette lost con-

trol attempting to make a turn and slid backwards over an embankment. Officer Tullis testified that in the second or two before the Chevette slid over the embankment, his headlights were shining directly into the vehicle's front windshield, with the result that he was able to get a facial view of the driver.

After the Chevette slid over the embankment, its driver got out and fled on foot. Officer Tullis went to a Gulf service station located a few hundred yards away and alerted its personnel to be on the lookout for a white male teenager with blond, shoulder-length hair, wearing a dark blue shirt or sweater and what appeared to be blue jeans. Approximately two hours later, Tullis received a call from the Gwinnett County Police Department that a person was being held at the Gulf station who met this description. When Tullis arrived at the Gulf station shortly thereafter, he observed several Gwinnett County officers talking to the defendant, whom he immediately and unhesitatingly recognized as the driver of the Chevette. Without engaging in any conversation with the Gwinnett County officers, Officer Tullis walked directly to the defendant and placed him under arrest for motor vehicle theft.

After the Chevette had been abandoned by its driver, Officer Tullis had conducted a search of its contents and had seized from inside it a hammer, a pair of vise grips and a screwdriver, which items were duly identified and introduced as evidence at trial. At the time of the arrest, Officer Tullis seized from the defendant's person a pair of pliers and a tire gauge, which, he testified, he placed inside a brown paper sack and gave to the personnel at the Gwinnett County jail upon transporting the defendant there.

Deputy Sheriff Bobby Aaron testified that she was working as the booking officer at the jail when the defendant was brought there by the Norcross police and that among the items which she logged in as his possessions at this time was a Ford key on a key ring. Detective Bruno of the Gwinnett County Police Department testified that he retrieved this key from the jail on October 1, 1984, took it to Lester Cash's residence, and observed Cash start his van with it. Cash similarly identified this key as being his, along with the tire gauge seized from the defendant's person at the time of his arrest.

Jeryl Sadler, the owner of the Ford pickup truck which had been broken into on the morning of the defendant's arrest, identified the hammer and the vise grips which had been found inside the Chevette as being hers, stating that she could identify the hammer by a store sticker which was still affixed to it. Similarly, Janie Harmon, the owner of the Ford Pinto station wagon, testified that the pliers taken from the defendant's person at the time of his arrest and the screwdriver found inside the Chevette were the same tools missing from her car, although she admitted on cross-examination that there was noth-

ing in particular about these items to distinguish them from other such tools. *Held*:

1. The defendant sought to exclude Officer Tullis' identification testimony on the ground that the one-on-one "showup" at the gas station was so suggestive as to give rise to a substantial likelihood of misidentification.

Although one-on-one showups conducted soon after a suspect's apprehension are always suggestive, they are, as in this case, often necessary. See, e.g., *Horah v. State*, 173 Ga. App. 306, 308 (3) (325 SE2d 917) (1985). The factors to be considered by the trial court in determining the likelihood that irreparable misidentification may have resulted from a suggestive pre-trial identification procedure are set forth in *Neil v. Biggers*, 409 U. S. 188, 196 (93 SC 375, 34 LE2d 401) (1972), as follows: (1) The witness' opportunity to view the accused at the time of the offense; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; and (4) the level of ·certainty of the identification. See *Hicks v. State*, 167 Ga. App. 771, 773 (307 SE2d 548) (1983). Each of these factors militates against the possibility that the showup in this case resulted in a substantial likelihood of misidentification, with the exception of the first, the officer having had only a second or two to view the accused during the chase. However, given the fact that the officer was quite obviously concentrating on the defendant's appearance with a view towards obtaining a description of him, and given the fact that the description he did obtain proved to be accurate, the brevity of his opportunity to observe the defendant is not sufficient, in and of itself, to require the exclusion of his testimony. Accord *Ricardo-Reyes v. State*, 169 Ga. App. 633 (314 SE2d 260) (1984).

2. The evidence was sufficient to support the jury's verdict, and consequently the trial court did not err in refusing to direct a verdict of acquittal with respect to the counts of which the defendant was found guilty. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We reject the defendant's contention that there was insufficient proof that the 1981 Chevette pursued by Officer Tullis was the same one stolen from Kevin Farrell earlier that morning. As previously indicated, Officer Tullis testified that he spotted the defendant driving the vehicle within a mile and a half of the Farrell residence, only 20 minutes after taking the stolen car report; and he testified that the vehicle had the same tag number as the one reported stolen by Farrell. Furthermore, when shown a police photograph of the vehicle taken after the chase, Farrell testified that it was identical in appearance to his own. While it might perhaps have been preferable to have provided additional identification evidence in the form of the vehicle's identification or registration number, the evidence presented was amply sufficient to enable a rational juror to

conclude beyond a reasonable doubt that the vehicle the defendant was driving on the morning in question was the one stolen from Farrell.

We similarly reject the defendant's contention that there was insufficient evidence to establish that the key to Lester Cash's Ford van was found in his possession at the time of his arrest. Although Officer Tullis testified at trial that he did not remember having taken the key from the defendant's person, there is no other logical explanation for how it came to be among the other items taken from him at the time of his arrest.

3. The court's charge on the consideration to be given evidence of good character was in accordance with the Suggested Pattern Jury Instructions prepared by the Council of Superior Court Judges of Ga. (1984 ed.) and was a correct statement of law. See *Morrow v. State*, 166 Ga. App. 883 (3) (305 SE2d 626) (1983). The defendant's contention to the contrary notwithstanding, the charge did not suffer from the defect at issue in *Millwood v. State*, 174 Ga. App. 113 (1) (329 SE2d 273) (1985).

4. The court did not err in charging the jury that every person may be presumed to be of sound mind and discretion, but that the presumption may be rebutted, nor that they might draw the inference, if they chose to do so, that a person of sound mind and discretion intends the natural and probable consequences of his acts. Because these charges were couched entirely in permissive rather than mandatory language, they were not unconstitutionally burden-shifting. See Suggested Pattern Jury Instructions, supra at p. 25; *Heard v. State*, 175 Ga. App. 793 (334 SE2d 374) (1985). Compare *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985).

5. The trial court did not err in giving an "Allen" charge nor in refusing to declare a mistrial when the jury reported, after deliberating for approximately six and a half hours over a two-day period, that they had not reached a unanimous verdict but were divided eight to four on three counts and nine to three on the other count. "The decision of whether to give a jury in disagreement the 'Allen' charge, including deciding the length of time a jury may be allowed or required to deliberate before the charge is given, generally lies within the discretion of the trial court and will not be disturbed on appeal unless there is a manifest abuse of that discretion. (Cits.)" *Bankston v. State*, 169 Ga. App. 955, 956-957 (315 SE2d 671) (1984). Accord *Dowdy v. State*, 169 Ga. App. 14 (5) (311 SE2d 184) (1983). No such abuse of discretion has been shown in this case.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

Decided February 27, 1986 —
Rehearing denied March 11, 1986 — ▮▮▮▮▮▮▮

*J. Douglas Sexton*, for appellant.

*Thomas C. Lawler III, District Attorney, Phil Wiley, Assistant District Attorney*, for appellee.