## 75069. KILLENS v. THE STATE.
### (362 SE2d 425)

BIRDSONG, Chief Judge.

Appellant Randy Killens was convicted of selling cocaine in violation of the Georgia Controlled Substances Act. We affirm.

1. Appellant maintains the evidence is insufficient to establish his guilt beyond a reasonable doubt.

The evidence adduced at trial authorized the jury to find that in August of 1985 Georgia Bureau of Investigation agents were engaged in an undercover narcotics operation in Waycross, Georgia. Agents were to make as many drug buys as possible within a short period of time, but were to wait to make arrests until the operation was completed so as to not reveal their cover. On the afternoon of August 21, Agents Robin Skinner and Ronnie Baldwin went to a local nightclub

to locate a disc jockey with whom Agent Baldwin had spoken earlier about purchasing cocaine. Agent Baldwin entered the club but could not find the disc jockey. Two black males who identified themselves as "Rickey" and "John" approached Agent Baldwin. "Rickey" was later identified as appellant Killens.

When the two asked Agent Baldwin why he was looking for the disc jockey, Agent Baldwin advised them he was hoping to complete a drug transaction. The two individuals indicated they could get him anything he wanted. The three then joined Agent Skinner outside and drove to nearby Oak Street where they pulled over. The two black males got out of the car, disappeared around a building, and returned some fifteen minutes later. Appellant handed Agent Skinner a quantity of cocaine and the other individual gave Agent Skinner a quantity of marijuana. Agent Skinner gave $50 to the second black male, who split it with appellant. The agents were with the two individuals for over an hour in broad daylight.

On December 4, 1985, agents involved in the operation returned to Waycross to make arrests. Driving along Oak Street, Agent Baldwin identified appellant and apprehended him. Appellant was transported to the Ware County Sheriff's Office where Agent Skinner positively identified him in a one-on-one show-up.

The evidence presented at trial taken in the light most favorable to the verdict was sufficient to allow a rational trier of fact to find appellant guilty of violating the Georgia Controlled Substances Act beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Appellant contends the State's use of its peremptory strikes to exclude members of his race from the petit jury denied him his federal and state rights to equal protection of the laws. Traditionally, peremptory challenges have required no justification. *Gamble v. State*, 257 Ga. 325 (357 SE2d 792). However, the recent U. S. Supreme Court decision in *Batson v. Kentucky*, 476 U. S. __ (106 SC 1712, 90 LE2d 69), makes it clear that "the State's privilege to strike individual jurors through peremptory challenges, is subject to the commands of the Equal Protection Clause." *Batson*, supra, 90 LE2d at 82.

Under *Batson*, the initial burden is on the defendant to raise a prima facie showing of purposeful discrimination by the State. *Batson* outlined a three-step process by which a defendant makes such a showing. "[F]irst, [the defendant] must show that he is a member of a cognizable racial group, [cit.] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact . . . that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'

*Avery v. Georgia*, 345 U. S. 559, 562 (73 SC 891, 97 LE2d 1244). Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, supra, 90 LE2d at 87-88.

If the defendant makes the requisite showing, the burden shifts to the State to come forward with a race-neutral explanation for the monochromatic result of its use of peremptory strikes. *Batson*, supra, 90 LE2d at 86. The explanation "need not rise to the level justifying exercise of a challenge for cause," but it must be a " 'clear and reasonably specific' " race-neutral explanation, related to the case to be tried. *Batson*, supra, 90 LE2d at 88 and n. 20.

The trial judge listened to appellant's objections outside of the presence of the jury. Appellant demonstrated the fact that he was black and that the State used its peremptory strikes to remove two black veniremen from the petit jury. The result was an all-white jury with only a black alternate. Further, appellant complained that white jurors were not struck when situated similarly to the two blacks that were challenged.

We may assume the trial court considered this as sufficient prima facie evidence of the State's discriminatory intent as the judge then gave the prosecutor a chance to respond. The prosecutor explained that he excused juror Everette because she knew and attended the same church as appellant's mother. Although some of the white veniremen knew other relatives of appellant, those were business, not social, religious relationships. The prosecutor believed a social, religious relationship was likely to create prejudice in the mind of juror Everette.

The prosecutor explained that juror Ross was excused because he failed to raise his hand during voir dire when the panel was asked whether they had any family member or close friend who had been arrested. The sheriff, who was present, indicated to the prosecutor that Mr. Ross' son had been arrested on numerous occasions. Mr. Ross also indicated that he was on Social Security disability, and the prosecutor explained he did not like to accept jurors on disability. While appellant claims a white juror who was also on disability was not challenged, that juror had not failed to raise his hand during the voir dire as to the question of disability.

Although the prosecutor may not strike from assumptions based solely upon race, he "may strike from mistake, or from ignorance, or from idiosyncracy." *Gamble*, supra at p. 326. Thus, the prosecutor's explanations were sufficient to rebut the prima facie case in that they were clear and reasonably specific, related to the particular case, and, most importantly, race-neutral.

After hearing appellant's response to these explanations, the trial

court ruled that appellant had not carried his ultimate burden of proving discriminatory intent. The findings of the trial court are "entitled to appropriate deference by a reviewing court." *Batson*, supra, 90 LE2d at 89, n. 21. These findings will not be disturbed unless clearly erroneous. *Gamble*, supra at p. 326; *Powell v. State*, 182 Ga. App. 123, 124 (2) (355 SE2d 72). We find no clear error here.

3. The trial court's refusal to suppress identification of the appellant at the one-on-one show-up, and later in court, is enumerated as error. "The evil to be avoided is the . . . misidentification of an accused. The holding of *Neil v. Biggers*, 409 U. S. 188, 196-201 (93 SC 375, 34 LE2d 401) is that a two-step analogy is to be used. First, an impermissibly suggestive identification procedure is to be avoided. Only if it was suggestive need the court consider the second question — whether there was a substantial likelihood of irreparable misidentification. *Payne v. State*, 233 Ga. 294, 299 (210 SE2d 775)." *Anderson v. State*, 168 Ga. App. 243, 245 (1) (308 SE2d 623).

First, it is clear that Agent Baldwin's pretrial identification was in no way tainted because the procedure was not suggestive. Agent Baldwin simply observed and identified appellant from the streets of Waycross.

We must turn then to the show-up identification by Agent Skinner. Although one-on-one show-ups have been sharply criticized, and are inherently suggestive (*Benton v. State*, 178 Ga. App. 239, 241 (1) (342 SE2d 722)), the identification need not be excluded as long as "under all the circumstances the identification was reliable notwithstanding any suggestive procedure. [Cits.]" *Cleveland v. State*, 164 Ga. App. 478, 480 (1) (298 SE2d 22). Our inquiry, therefore, must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, supra, 409 U. S. at 199-200.

In the present case, Agent Skinner spent a substantial amount of time with appellant, over an hour during the middle of the afternoon. Agent Skinner was not simply a casual observer. Her attention was focused on appellant, the person from whom she was buying the cocaine, and whom she would later have to identify. Agent Skinner was unequivocal in her identification of appellant at the show-up. Although four months had elapsed between the time of the crime and the time of the show-up, this was a necessary part of the undercover operation and not sufficient to taint the identification.

In addition, both agents testified that their in-court identifications were based upon their recollection of appellant on the day of the purchase. Thus, Agent Skinner's identification had an independent basis other than the show-up. Even were we to assume, arguendo, that the one-on-one show-up was tainted, the in-court identification was admissible since it had an independent basis other than the prior identification. *Code v. State*, 234 Ga. 90, 99 (214 SE2d 873); *Anderson*, supra, p. 245; see also *Hamilton v. State*, 180 Ga. App. 284 (349 SE2d 230).

4. Appellant contends that an alleged seizure of a defense witness, appellant's brother Rickey, rendered his trial unfair. The record contains no evidence of a "seizure" as claimed by appellant. Moreover, appellant made no objection at the time of the alleged misconduct and waited until both sides had rested before he made a motion for mistrial.

"We reject this enumeration upon either of two grounds. By failing to make a timely objection, [appellant] has waived any objection that might have been made. *Burt v. State*, 156 Ga. App. 127, 128 (3) (274 SE2d 124). Moreover, a mistrial will not lie where evidence is admitted without objection (*McCormick v. State*, 152 Ga. App. 14, 15 (2) (262 SE2d 173)) and a motion for mistrial not made contemporaneously with the alleged misconduct makes the motion not timely. *Favors v. State*, 145 Ga. App. 864, 867 (4) (244 SE2d 902)." *Bennett v. State*, 165 Ga. App. 600, 601 (3) (302 SE2d 367). Thus, appellant has preserved nothing for review on appeal.

5. Appellant contends the trial court erred in denying his motion to reopen the case after all the evidence was closed. It was appellant's intention to put his second brother, John, on the stand in order to show the strong resemblance between appellant and his two brothers. The trial court ruled that appellant's counsel should have discovered the resemblance upon a reasonable investigation and presented it during trial. It is well settled that the reopening of the evidence is within the sound discretion of the trial court. That decision will not be disturbed absent an abuse of discretion. *Hurt v. State*, 239 Ga. 665, 672 (8) (238 SE2d 542); *Pope v. State*, 178 Ga. App. 148, 149 (1) (342 SE2d 330). We have found no abuse of discretion.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 20, 1987 —
REHEARING DENIED NOVEMBER 3, 1987.

*James A. Yancey, Jr.*, for appellant.
*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Del-*

man L. Minchew, *Assistant District Attorneys*, for appellee.