## S00A0790. GIBSON v. THE STATE.
(537 SE2d 72)

THOMPSON, Justice.

Brian Gibson was convicted by a jury of malice murder, felony murder, aggravated assault (three counts), and possession of a firearm by a convicted felon.[1] On appeal he asserts that the trial court

---

[1] The crimes occurred on August 28, 1995. A six-count indictment was returned on June 18, 1996, charging Gibson with malice murder, felony murder, aggravated assault (three counts), and possession of a weapon by a convicted felon. Trial commenced on February 10, 1997, and the jury returned its verdict of guilty as to all counts on February 19, 1997. On the same day, Gibson was sentenced to life imprisonment for malice murder (felony murder and one count of aggravated assault were merged), two consecutive terms of twenty and fifteen years for aggravated assault, and five consecutive years for weapons possession. A motion for new trial was filed on February 25, 1997, amended on September 22, 1998 and March 16, 1999, and denied on May 17, 1999. Gibson's notice of appeal was filed on May 21, 1999. The

erred in inquiring about the numerical division of the jury after it announced that it could not agree as to certain charges; and that he was denied effective assistance of trial counsel. We affirm.

The three victims drove together to a convenience store in Atlanta at 4:00 a.m. to purchase beer. Upon driving away from the store, the female passenger expressed an interest in purchasing crack cocaine. At that point she and the driver noticed Gibson and two other men in the driveway of an apartment complex adjacent to the convenience store. They stopped the car and one of the men from the driveway approached and sold $20 of a substance represented as crack cocaine to the female passenger. Gibson then approached the car and rebuked the passengers for not buying the drugs from him. After driving away, the woman discovered that the substance she purchased was not cocaine, and the three returned to confront the drug seller. An argument ensued between the people in the car and the drug seller, whereupon Gibson walked up, repeatedly fired a gun into the car at the three occupants, and continued shooting as the car drove off. The driver was shot in the leg and a male passenger was shot in the head; he died three days later.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), for a rational trier of fact to have found Gibson guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. After seven hours of deliberation, the jury sent a note to the trial judge stating that it had reached a verdict on some counts but were unable to agree on other counts. Over Gibson's objection, the trial court asked the jurors for a numerical breakdown of their division, specifically cautioning them not to state which counts were undecided or whether the vote favored acquittal or conviction. The foreperson responded that they were split 11 to 1, whereupon the trial court gave the jury a modified *Allen*[2] charge. One hour and fifteen minutes later, the jury returned a guilty verdict on all counts. The jurors were polled and confirmed their verdicts.

Gibson submits that the court's inquiry as to the numerical split of the jury unconstitutionally violated his rights to due process of law and a fair trial. The law is clear in this state that "[a] trial court may, after the jury has had a case under consideration and indicates that it is unable to agree on a verdict, inquire how the jury stands numerically." *Muhammad v. State*, 243 Ga. 404, 407 (4) (254 SE2d 356) (1979). Accord *Peppers v. State*, 261 Ga. 338 (6) (404 SE2d 788) (1991); *Banks v. State*, 169 Ga. App. 571 (2) (314 SE2d 235) (1984);

---

case was docketed in this Court on February 1, 2000, and oral argument was heard on May 8, 2000.

[2] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

*Godbee v. State*, 155 Ga. App. 671 (3) (272 SE2d 537) (1980). As in the present case, the decision in *Muhammad* rested on the fact that the court merely asked the jury to specify the extent, not the nature, of its division. This is consistent with our recent admonition in *Sears v. State*, 270 Ga. 834, 839 (1), n. 1 (514 SE2d 426) (1999), that courts should not inquire of the "*nature* of a jury's numerical division." (Emphasis supplied.)

In *Muhammad*, supra at 408 (4), we declined to follow the ruling in *Brasfield v. United States*, 272 U. S. 448 (47 SC 135, 71 LE 345) (1926), which holds that it is per se reversible error for the trial judge to inquire into the numerical division of a deadlocked jury. This is so because *Brasfield* was decided by the Court in the exercise of its supervisory powers over federal courts, rather than on constitutional due process grounds which would be binding on the states under the Fourteenth Amendment. *Muhammad*, supra at 408. We continue to adhere to that position.[3]

The judge's inquiry of the jury split standing alone is not so unduly coercive as to deny a defendant a constitutional right to a fair and impartial jury. Id. Whether a verdict was reached as the result of coercion depends on the totality of the circumstances. *Sears*, supra at 837. An inquiry into the numerical division of a deadlocked jury enables the court to ascertain the likelihood of agreement among the jurors and thus serves a legitimate purpose of furthering the court's ability to control the trial. Accordingly, we hold that it is constitutionally permissible for the trial judge to inquire into the numerical division of a jury that reports deadlock if, under the totality of the circumstances, it is not shown that the jurors were coerced into changing their views.

3. Nor did the trial court abuse its discretion in giving a version of the *Allen* charge after ascertaining the numerical division. The instruction was given after seven hours of deliberation and after the jurors announced that they were at an impasse. See *Benton v. State*, 178 Ga. App. 239 (5) (342 SE2d 722) (1986) (holding that *Allen* charge given after six and a half hours of deliberation was not an abuse of discretion). Nothing in the instruction was "coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors," *McMil-*

---

[3] Nearly every federal circuit court which has addressed the issue has rejected *Brasfield's* per se reversal mandate when reviewing state court proceedings on federal habeas corpus petitions. See *Lowenfield v. Phelps*, 484 U. S. 231, 240, n. 3 (108 SC 546, 98 LE2d 568) (1988). See also *Montoya v. Scott*, 65 F3d 405, 412 (5th Cir. 1995); *Jiminez v. Myers*, 40 F3d 976, 980, n. 3 (9th Cir. 1993); *Williams v. Parke*, 741 F2d 847, 851 (6th Cir. 1984); *Locks v. Sumner*, 703 F2d 403, 406 (9th Cir. 1983); *United States ex rel. Kirk v. Director, Dep't of Corrections*, 678 F2d 723, 727 (7th Cir. 1982); *Cornell v. Iowa*, 628 F2d 1044, 1047 (8th Cir. 1980); *Ellis v. Reed*, 596 F2d 1195, 1197, 1200 (4th Cir. 1979).

*lan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278) (1984), and inasmuch as the evidence of guilt was overwhelming, there exists no reversible error. See *Harris v. State*, 263 Ga. 526 (6) (435 SE2d 669) (1993). See also *Sears*, supra at 838 (it cannot be said that verdict was coerced simply because the trial court gave a modified *Allen* charge after jury revealed its numerical division); *Banks*, supra at 571 (2).

4. Gibson asserts he was denied effective assistance of trial counsel based on counsel's failure to object to the introduction of certain hearsay statements.

Lead investigator, Detective Chambers, testified without objection that he received a note from another officer several days after the shooting. In that note, the second officer related that he had received a telephone call from an unidentified person who stated that "Bryant" was responsible for the murder. Neither the second officer nor the unidentified caller testified at trial. In cross-examining Detective Chambers, trial counsel emphasized that the caller had identified "Bryant" as the assailant. In closing argument counsel pointed out this discrepancy in an effort to create reasonable doubt by showing that the caller had named someone other than Brian Gibson as the perpetrator.

Detective Chambers also testified regarding the female passenger's statements about the incident and her identification of Gibson in a photographic lineup. The State did not call the female passenger as a witness at trial. At a hearing on the ineffective assistance claim, trial counsel explained that she did not object to testimony concerning the female passenger's version of the events because the statement confirmed that the altercation took place during a drug deal, and this evidence was favorable to the defense. Counsel explained that she had unsuccessfully attempted to suppress evidence of the photo lineup in extensive pretrial hearings and that she had obtained a continuing objection to any testimony relating to it. Moreover, testimony from a police officer who conducted a lineup identification as to the identity of persons picked out of such a lineup is admissible. *Haralson v. State*, 234 Ga. 406, 408 (4) (216 SE2d 304) (1975).

The matter of when and how to raise objections is generally a matter of trial strategy. *Milliken v. State*, 230 Ga. App. 810 (498 SE2d 127) (1998). Gibson has failed to establish that counsel's assistance was deficient or that her performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

*Judgment affirmed. All the Justices concur.*

Decided October 2, 2000.

*Brian Steel,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General,* for appellee.

