## S01A1176. WRIGHT v. THE STATE.
(553 SE2d 787)

SEARS, Presiding Justice.

The appellant, Arcelious Wright, was convicted of malice murder and other crimes in the shooting death of David Harris.[1] On appeal, Wright contends that the evidence is insufficient to support the convictions, and that the trial court erred in giving the jury an *Allen*[2] charge. Because we conclude that the evidence supports the convictions and that the trial court did not abuse its discretion in giving the *Allen* charge, we affirm.

1. On the afternoon of July 7, 1998, Wright was playing video games at a house in Savannah, Georgia, with his friends, Joe Burke and James Love. David Harris and his friend, Shawn Carter, drove

---

[1] The crimes occurred on July 7, 1998, and Wright was indicted on May 12, 1999. Following a jury trial, Wright was found guilty on October 27, 1999, of malice murder, felony murder, the possession of a firearm by a convicted felon, and the possession of a firearm during the commission of a felony. The felony murder conviction was vacated by operation of law, see OCGA § 16-1-7; *Goforth v. State*, 271 Ga. 700 (523 SE2d 868) (1999), and the trial court sentenced Wright to life in prison for the malice murder conviction. For each possession offense, the trial court sentenced Wright to a consecutive term of five years in prison. Wright filed a motion for new trial on November 2, 1999, and the court reporter certified the trial transcript on December 4, 1999. The trial court denied Wright's motion for new trial on February 27, 2001, and Wright filed a notice of appeal on March 29, 2001. The appeal was docketed in this Court on May 8, 2001, and it was submitted for decision on briefs on July 2, 2001.

[2] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

up and parked near the house. Carter went to visit a friend in a nearby apartment complex, and Harris entered the house in which Wright was playing video games and accused Wright of stealing his (Harris's) property. Wright ignored Harris and continued to play the video game. Harris responded by pulling out a pistol from his waistband and firing one shot over Wright's head. Carter, who was outside, heard the shot and then saw Harris, who appeared angry, walking away from the house. According to Carter, Harris was attempting to "stuff" a gun in his pants. Carter testified that, as Harris was walking away from the house, he (Carter) saw an arm holding a pistol appear from the front door of the house. The pistol was pointed at Harris, and Carter testified that as soon as he saw the gun, the gun was fired. Carter added that Harris was struck in the back and fell forward on the ground. Carter further testified that he then ran away, but that he heard more shots and heard someone screaming.

James Love testified that after Harris fired the shot over Wright's head, he (Love) left the house and went outside. He added that he then saw Harris leave the house and put his gun away. Love also testified that a few moments later, he saw Wright come out of the house with a gun and begin firing at Harris, who was walking away from the house.

Wright testified that he was scared after Harris shot over his head, and that he grabbed a gun and started to walk out of the house. Wright also testified that when he left the house, Carter told Harris that he (Wright) was coming, and Harris turned to face Wright and pulled out his gun. According to Wright, at that point, he (Wright) fired his pistol at Harris. Wright testified that he had a semiautomatic pistol that fired rapidly, and that he was not sure how many shots he fired at Harris.

Medical evidence established that Harris was shot seven times and that he died from multiple gunshot wounds to the chest and neck. The state's forensic pathologist testified that Harris had been shot once in the back, but that most of the bullets entered the right side of Harris's torso, traveled at a downward angle, and indicated that the victim was on the ground when he was shot.

Having reviewed the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found Wright guilty beyond a reasonable doubt of the offenses for which he was convicted.[3]

2. Wright contends that the trial court's *Allen* charge was unduly coercive, in that it informed the jury that if it could not reach a unan-

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

imous decision, it would cause a mistrial and "the witnesses and parties don't want to go through [another trial] again unless they have to." We conclude, however, that considering the *Allen* charge as a whole, it was not unduly coercive.

" 'The issue in reviewing [an *Allen*] charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors.' "[4] This Court has held that an *Allen* charge that is not otherwise coercive is not made coercive merely by telling the jury that if the jury remains deadlocked, a mistrial would result and the case would have to be tried again.[5] We also have held that when an *Allen* charge instructs the jurors that they should not give up their opinions just to reach an agreement, it is a factor that supports a conclusion that the charge was not coercive.[6]

In the present case, in addition to the language of which Wright complains, the trial court also informed the jury that the verdict had to be the verdict of each juror; that a juror should not acquiesce in other jurors' opinions merely to reach an agreement; that all jurors should examine the issues with candor and fairness and with proper deference for the opinions of each other; that the jury should deliberate in a spirit of fairness and candor and try to arrive at a verdict; and that the jurors should examine the evidence and decide the issues if they could conscientiously do so. On balance, we conclude that the court's *Allen* charge would not have forced jurors to abandon their honest convictions in order to reach a verdict. Accordingly, we find no error.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2001.

*Richard M. Darden*, for appellant.

*Spencer Lawton, Jr., District Attorney, Kimberly D. Rowden, Assistant District Attorney, Thurbert E. Baker, Attorney General, Tammie J. Philbrick, Assistant Attorney General*, for appellee.

---

[4] *Black v. State*, 255 Ga. 668, 671 (341 SE2d 436) (1986), quoting *McMillan v. State*, 253 Ga. 520, 523 (322 SE2d 278) (1984). Accord *Stephens v. State*, 261 Ga. 356, 357 (405 SE2d 470) (1991).

[5] *McMillan*, 253 Ga. at 523; *Hardy v. State*, 242 Ga. 702 (251 SE2d 289) (1978).

[6] *Jones v. State*, 270 Ga. 25, 28 (505 SE2d 749) (1998); *Black*, 255 Ga. at 671.